## NATHANIEL THAYER *vs.* CITY OF BOSTON.

Worcester.  Jan. 3, 4. — March 23, 1878.  MORTON & LORD, JJ., absent.

In an action against a city to recover the amount of a tax, assessed on the personal property of the plaintiff on May 1, 1876, and paid under protest, there was evidence that until 1869 the plaintiff had lived in the defendant city for many years with his family in a house owned by him; that, in that year, being dissatisfied with the amount of tax there assessed on his personal property, he gave notice to the assessors that he had removed his residence to another town, in this state, where at the time he owned the place on which he was born, and had built a house, in which he had lived with his family from June to October or November in each year; that, after giving the notice, he continued to live there, as before, for a part of each year, voting and being taxed only in that town, taking part in town meetings, and occasionally serving on town committees. *Held,* that the jury would be warranted in finding that the plaintiff was not legally taxable in the defendant city, although he removed to lessen his taxation, and on the day the tax was assessed he was with his family living in his house in that city. *Held, also,* that a request by the defendant, for a ruling that the plaintiff was *primâ facie* an inhabitant of the defendant city, and there resident, if he and his family were on May 1 living in a house of his own in the same way in which he had lived during three years in which he admitted that he had been a taxable inhabitant of the defendant city, was properly refused.

If a person has a dwelling-house in each of two towns of this Commonwealth, he may have his home in one town for the purposes of taxation, although he spends the greater portion of the year in the other, and is there on the first day of May.

In an action against a city to recover the amount of a tax, assessed on the personal property of the plaintiff, and paid by him under protest, the issue was whether the plaintiff had in good faith changed his residence to another place. The defendant contended that the change was not in good faith, but to avoid taxation. The plaintiff was asked what amount of personal property he had not exempt from taxation. This question he answered. He was then asked what amount of personal property he had, and what tax he paid on stock in a foreign state. These questions he declined to answer, and the judge refused to compel him to answer them. *Held,* that the defendant had no ground of exception.

CONTRACT to recover the amount of a tax, assessed by the defendant city on the personal property of the plaintiff on May 1, 1876, and paid by the plaintiff under protest.

At the trial in this court, before *Morton*, J., it appeared that in 1869, the plaintiff was an inhabitant of Boston, where, since his coming of age, he had lived with his family and paid taxes; that he there had a dwelling-house and an office for business, where his account books and valuable papers were kept; that he complained of the increase of his taxes in the previous year, and informed the assessors that, if they were again increased, he would pay no more taxes in Boston; that in the assessment of the following year his taxes were increased, and he accordingly gave notice to the assessors of Boston and to the assessors of Lancaster that he had removed his residence to the latter place, where he should be thereafter taxed; that the plaintiff was born in Lancaster, in 1808, and, at the time of giving the notice, owned the place formerly belonging to his father, where he was born; that upon this place, in 1860, he had erected a new dwelling-house, and afterwards lived there a portion of each year with his family, going from his house in Boston early in June and returning in October or November following; that, after giving the notices, he continued to live there with his family as before, for a part of each year, voting and being taxed only in that town, taking part in town meetings and occasionally serving on town committees; that, on May 1, 1876, he was, with his family, in actual occupation of his house in Boston; that at this time, and since 1865, when he retired from business, he had been engaged in no business except looking after his property; that he had, for some years before 1869, entertained the idea and intention, and declared the intention, of at some time removing his residence from Boston to Lancaster, but had not, before 1869, fixed a time in his mind. The plaintiff, on cross-examination, testified that Boston was, and had been, ever since he was married, the principal place of his social and domestic life; and that the greater part of his family expenditures had been there made; that he thought he did no act to change his residence in 1869, except to give the notices, and that he may have voted in Lancaster the following year; and that the mode of life and habits of himself and family in regard to living in Lancaster were very much the same after giving the notice as before.

The defendant contended that the motive of the plaintiff, in giving the notice to the defendant and to the town of Lancaster, and in professing to make a change of residence in 1869, was merely to change the place where he should thereafter pay his taxes, without changing his mode of life or home in any other particular, and that this was done solely to enable him to pay a smaller sum for taxes, and to avoid being taxed on a portion of his property for which he was legally liable to taxation. It appeared in evidence that he was in fact taxed on a smaller amount of personal property in Lancaster than in Boston; and he was asked, on cross-examination, the following question : " What amount of personal property had you, on the first of May, 1868, not exempt from taxation by the statutes of Massachusetts ? " He answered this by saying that he had not in Massachusetts more than a specified amount of personal property on which he was not taxed elsewhere ; that he could not say what the statutes of Massachusetts exempted. He was then asked, " What amount of personal property had you ? " The witness declined to answer this question ; and the judge refused to order him to answer. The witness also testified that, in estimating that he was overtaxed in Boston, he did not consider that he was taxed on stock owned by him in the Chicago, Burlington and Quincy Railroad Company, because that was taxed in every school district, and he paid taxes on it as a stockholder. He was then asked, " How much is that ? " This question the judge refused to compel the witness to answer; and the defendant excepted to the refusal to compel both questions to be answered.

The defendant asked the judge to instruct the jury as follows :

" 1. The burden of proof is on the plaintiff throughout to establish all the facts in controversy in this suit, and especially that he was not taxable in Boston on May 1, 1876.

" 2. If the plaintiff, on May 1, 1876, was an inhabitant of Boston or a resident in that city (the two expressions being for the purposes of this case identical) he was there taxable.

" 3. *Primâ facie*, the plaintiff was an inhabitant of Boston and there resident, if he and his family were, on that day, living in a house of his own in the same way in which he had lived there during those years in which he admits that he had been a taxable inhabitant of Boston.

" 4. A man cannot change his taxable domicil from one place to another in this Commonwealth by a mere declaration of his intention to make such a change without any alteration of the place or mode of life of himself or his family.

" 5. Every citizen of Massachusetts is taxable in that place where his home is ; meaning by this word the principal place of abode of himself and his family.

" 6. If a citizen has two residences in this state, in each of which he resides with his family a part of the year, he is taxable where he resides on May 1 of any year.

" 7. If the principal place of abode of a man and his family is in one place, he cannot, by choice or declaration of intention, set up a domicil for taxation elsewhere.

" 8. If the plaintiff and his family have every year resided in Boston on May 1, and also a much longer portion of the time than in Lancaster, and if Boston has been uniformly the chief centre of their social and business interests and relations, then the jury must find for the defendant, notwithstanding any declaration or intentions of the plaintiff as to where he intended to be taxed or to reside.

" 9. The burden of proof is on the plaintiff affirmatively to satisfy the jury that Boston is not his real, true and actual home.

" 10. The jury is not warranted upon the evidence in finding a verdict for the plaintiff."

The judge declined to give the instructions requested, except so far as the instructions given embrace them, and instructed the jury as follows :

" The burden of proof is upon the plaintiff to prove to your satisfaction, by a fair preponderance of the evidence, all the facts which are necessary in order to make out his case.   The question for you to determine is, whether or not the plaintiff has proved this.   The laws of the Commonwealth provide that any man shall be taxable in the city or town of which he was an inhabitant on the 1st of May of each year.   What does the statute mean by a man's being an inhabitant of a town on the 1st of May ?   Very clearly by 'inhabitant' is not meant any man who may happen to be personally in the town on the 1st of May.   To use the illustration that has been used to you in argument, if it meant that, all of us would be inhabitants of and

taxable in the city of Worcester.* But by 'inhabitant' is meant any man who has a home in a place; any man who has there established a permanent home for himself and his family, if he has one; who there performs his municipal duties and exercises his municipal rights, and thus, as well as in other matters, identifies himself with the town as his home. In very many cases, certainly in the case of a very large majority of the people of this Commonwealth, there is no question about where a man's home is. Most of us have but one dwelling-house; most of us have our business, our family, connected solely with one town or city of the Commonwealth, and everybody recognizes at once that that is our home. But there are a great many cases where a man has one place, where he and his family reside, in one town, and he does business in another. For instance, the observation and experience of all of us teach us that the daily trains running to and from the city of Boston carry and return thousands of people who live in the adjoining towns, and yet who do their business in Boston. Having their place of business there, the centre of their business, their whole business there, does not make them inhabitants of Boston. They are still inhabitants of that town where they have their home; where they have established a permanent home for themselves, their wives, their children, their families; the town with which they are identified as being inhabitants, as exercising municipal duties, as holding municipal offices, as having their abiding place; the place, in other words, where they have their home; I am compelled to come back to the same word, because neither in the English nor any other language do I know of a synonym or equivalent for the homely Saxon word 'home.'

"Suppose a third case. Suppose a man lives in one of the country towns adjoining Boston, and has a house in the city which he occupies during the winter months. Or reverse the supposition, and suppose that a man has a house in Boston, and has another house by the seaside, or in some country town, which he occupies during the summer months. Which is his home? Now, you come to a case where it is a little more difficult to decide. A man can have but one home; he cannot be an inhab-

---

* On May 1, 1877, the case was on trial at Worcester.

ltant of two places at the same time. But, in the case which I am now supposing, where a man has two houses, it depends very largely indeed upon the question : What is the honest purpose and intention of that man himself ? Which of the two places does he in good faith and honestly regard and recognize as the home of himself and his family, if he has one ? And that question can be substantially decided by the question of the intention or purpose, in other words, the choice of the man.

."Suppose a little closer case than either of these, which will come very close to the case at bar ; suppose a man has two houses, one in a country town, as in Lancaster, and one in the city, which he occupies perhaps about an equal number of months and weeks during the year. Which of these is his home, and how are you to determine that question ? As I have said, he can have but one home. And here, too, the answer will depend very largely upon the honest intention and purpose of the man. Of course, each case, as it comes before the jury, will have its peculiar circumstances. There will be something of greater or less weight to indicate what is his true and real home, such as, perhaps, paying taxes, acting in municipal offices, voting in the one town or the other, and in various ways identifying himself with the town, and recognizing it as his established, real, substantial, and permanent home. I cannot, in any more definite words, define what is meant by ' home.' You all understand it. It is not capable of definition, but you all understand what is meant by a man's home. It is not exactly equivalent to residence, but it is the place where he has established a home for himself and his family.

" Now, you will apply these general principles, which I have endeavored to illustrate by supposing a variety of cases, to this case ; and you will bear in mind that the question is, whether or not the plaintiff was an inhabitant of Boston on May 1, 1876. It is admitted here that, prior to 1869, the plaintiff was, and had been for a number of years, an inhabitant of Boston, and, as contended by the defendant, the burden is upon him to show hat he has, either in 1869, or at some time since, prior to May 1, 1876, changed his home or domicil to Lancaster. It is very clear that the mere intention or purpose formed, or expressed and declared, to change his home is not enough. He must do some-

thing which actually works a change of home. The act of change, and the intention of change, must concur. What particular acts would be sufficient to constitute a change of home, I am not at liberty to state to you, or to express any opinion about, because I should be encroaching upon the duties and rights which the law confers upon you. Generally, where the question is whether a man has changed his home, it is easy to determine; because, ordinarily, a man has either to build or buy or hire a house for himself and his family in the new town ·to which he intends and proposes to remove; and that fact would ordinarily be so significant a fact of his intention, and where he moves into the house, that fact would be so significant of his actual change of his home, as would compel the mind to the conclusion that he had changed his domicil, and that he intended to do so. The plaintiff was under no such necessity, because he had two establishments at the time, one in Boston and one in Lancaster, both, according to the evidence, complete establishments, fit to move into at a moment's notice. But still, before he could effect a legal change of his domicil, he must have done something, and it is for you to inquire whether he has shown to you that he took steps, the effect of which was, really and in fact, to change his domicil, or his home, to Lancaster. And, as I said before, in regard to one of the other cases which I supposed, what was his honest purpose and intention is of very great consequence in passing upon this question; because, if you are satisfied that a man has an honest intention and purpose to change his home from Boston to Lancaster, under the circumstances in which the plaintiff was placed, that intention would be very significant, as illustrating and giving character to even trifling acts that he might have done in carrying out that intention, — trifling acts which he might have done to remove his domicil in pursuance of that intention. He was not, in this case, under the necessity of establishing a home there, in the sense of purchasing or building a house, because he had one, but has he shown to you that, after 1869, and prior to May 1, 1876, he did acts which fairly amounted to a change of his home from Boston to Lancaster, accompanied on his part with an honest purpose and intention to make Lancaster his home in the future? Now, if he did, then he established a home in Lancaster, according to his

choice, and he has a right to maintain it there as long as he may see fit.

" In the first place, in determining this question, where was the plaintiff's residence, or domicil, or home, on May 1, 1876, the fact of his personal presence in Boston at that time is not conclusive. A man may have his home in one place, and yet may be personally present in Boston. So that the fact that he was personally present and living in his house in Boston, with his family, would not of itself be conclusive that Boston was at that time his residence. It is for you to take that fact into consideration, and to say what bearing it has upon the question where was his real, substantial and permanent home. Whatever bearing you think it has upon that, you have a right to give it; but, further than that, the fact is not of any consequence. So, in regard to the fact that the plaintiff has, during the last five or six years, spent a large part of the time, with his family, in Boston, during the winters and springs, that is not conclusive that he was an inhabitant of Boston; but, like the other fact to which I have referred, it is a fact which you are to consider, and inquire how far it fairly bears upon the question which you are to pass upon.

" The fact that any man changes his home or his domicil for the purpose of avoiding, or escaping, or lessening his taxes, is of no consequence whatever. If he does, with an honest intention, and really and actually change his home, the motive with which he does it is of no consequence. How far the fact in this case, if such a fact be proved to your satisfaction, that that was the purpose or motive of the plaintiff in making this change, bears upon the question whether he did honestly and fairly make the change, is a matter in regard to which I have no right to say anything. It is solely for your consideration.

" You are, therefore, to take all the evidence which has been put into this case, (I do not refer to it, and I do not reply to some of the requests for instructions which were made in regard to the matter, because all the evidence that has been admitted is for your consideration, and the fact that it has been admitted shows that you are to consider it,) and give it such weight as you think it ought to have on the issue upon which you are to pass. You are to take all the evidence and consider it, and say

whether or not the plaintiff has satisfied you, that on May 1, 1876, he was not an inhabitant of Boston. If he has failed to satisfy you of that fact, then you should find a verdict for the defendant. But if, on the other hand, you are satisfied, by a fair preponderance of the evidence, that he was not an inhabitant of Boston on May 1, 1876, then it follows that Boston had no right to tax him, and you should return a verdict in his favor."

The jury returned a verdict for the plaintiff; and the judge reported the case for the determination of the full court. If error was found in the rulings on evidence which were excepted to, or in the refusals to instruct the jury as requested, a new trial was to be granted; otherwise, judgment was to be entered on the verdict for the plaintiff.

*D. Foster & W. S. B. Hopkins,* for the defendant. 1. This case presents to the consideration of the court the question, By what rule of law is it to be decided where an inhabitant of Massachusetts shall be taxed who has two residences within the state, each of which is the home of himself and his family for a part of every year? It is not a question of domicil, for a man's domicil may continue in Massachusetts after he has ceased to be a taxable inhabitant of this Commonwealth, and before he has acquired a new domicil elsewhere. That inhabitancy, which subjects to taxation, is not coextensive with domicil has been repeatedly decided. *Briggs* v. *Rochester,* 16 Gray, 337. *Colton* v. *Longmeadow,* 12 Allen, 598. *Shaw* v. *Shaw,* 98 Mass. 158. A man can have but one national domicil; one testamentary domicil to determine the devolution of his property after death; and usually but one domicil for the exercise of political privileges. But that a man can have two or more houses in each of which he habitually resides during different seasons of the year, and each of which is equally for the time being the home of himself and his family, is a fact within universal knowledge and observation. Many citizens possess and dwell in city houses and country or seashore houses, winter and summer residences, which are equally their homes for different seasons of the year. See *Douglas* v. *Mayor &c. of New York,* 2 Duer, 110, 119.

2. The Gen. Sts. *c.* 11, § 12, provide that "all personal estate within or without this state shall be assessed to the owner in the

city or town where he is an inhabitant on the first day of May," and by the Gen. Sts. *c.* 3, § 7, *cl.* 7, " the word ' inhabitant' may be construed to mean a resident in any city or town." A man, who is an inhabitant or resident in Boston on May 1 in any one year, may certainly become, by change of residence, an inhabitant of Lancaster on or before September 1, in the same year. If he may do that in a single year, he may do it every year, moving backwards and forwards. Such a removal may be made so as to escape a subsequently levied school-district tax. *Savary* v. *Georgetown,* 12 Met. 178. The rule that a citizen, who has within the Commonwealth two residences, each of which is his home during a part of every year, shall be liable to pay a tax, annual or special, general or local, imposed where he resides at the date of the incidence of the tax, is just and reasonable, simple in its application, philosophical in principle, and exactly conformable to the letter and the spirit of the statutes. Should this view be adopted, there was manifest error both in the rulings refused and the instructions given by the learned judge who presided at the trial.

3. The judge erred in not laying down for the guidance of the jury any rule by which to determine in which of the two municipalities the plaintiff was a taxable inhabitant, he having in each a residence and home, where he and his family lived in different portions of the year.

In *Lyman* v. *Fiske,* 17 Pick. 231, 234, Chief Justice Shaw said : " In general. terms, one may be designated as an inhabitant of that place which constitutes the principal seat of his residence, of his business, pursuits, connections, attachments, and of his political and municipal relations." Such is clearly the rule as to testamentary domicil. *Somerville* v. *Somerville,* 5 Ves. 750. *Harvard College* v. *Gore,* 5 Pick. 370, 377. *Abington* v. *North Bridgewater,* 23 Pick. 170. *Chenery* v. *Waltham,* 8 Cush. 327. *Otis* v. *Boston,* 12 Cush. 44. *Cabot* v. *Boston,* 12 Cush. 52. *Bulkley* v. *Williamstown,* 3 Gray, 493.

The judge in this case ignored the rule that the principal place of a man's own life and that of his family is to be deemed his residence or home. He even neglected to give to this consideration the force of one item to be weighed by the jury. He did not quite say that mere choice may determine of what place

a man situated like the plaintiff shall be deemed a taxable inhabitant, and that by mere change of choice his residence may be changed backwards and forwards; but he made the volition substantially the decisive consideration, and gave no weight whatever to the inquiry which was the principal place of the plaintiff's residence, Boston or Lancaster.

4. The tenth prayer for instructions should have been given. The evidence does not establish any actual change of residence. The plaintiff testified that the only act he did, except to give notice, was that he may have voted the following year. It does not appear that the plaintiff ever directed his name to be put on the list. That may have been the unauthorized act of the selectmen; and it would be no evidence against the town of his former established and permanent residence. *Lincoln* v. *Hapgood*, 11 Mass. 350. So the mere fact that the plaintiff suffered himself to be taxed in Lancaster is not competent evidence against the town of his former and permanent residence. *Mead* v. *Boxborough*, 11 Cush. 362. Nor is the fact that he acted for the town of his summer residence on committees such evidence. In view of the unsatisfactory character of the facts proved, and of the general effect of the evidence as to mode and necessities of living, there is nothing left but his election. But no man can have a principal place of abode in one town and create a domicil for taxation by election in another.

5. The ruling of the judge, by which the defendant was prevented from showing what was the value of the plaintiff's personal property when he claimed to have been overtaxed in Boston, and to have removed to Lancaster, was erroneous, and entitles the defendant to a new trial. The rule of evidence by which a judge is vested with great discretionary power over the extent and mode of the cross-examination of witnesses does not extend to the exclusion of any pertinent evidence. *Prescott* v. *Ward*, 10 Allen, 203, 209. *Rand* v. *Newton*, 6 Allen, 38. *Commonwealth* v. *Silk*, 111 Mass. 431. *Ragland* v. *Wickware*, 4 J. J. Marsh. 530. The inquiry was pertinent to the issue in this case. The fact that the plaintiff was taxed in Lancaster and the amount of valuation could only be of importance on the question of good faith. It was not competent as a fact tending to show change of domicil. *Mead* v. *Boxborough*, 11 Cush. 362. It

proving motive and intent, the most natural evidence to be first produced is the accomplishment of that which the mind wished or intended. It is clearly competent, in proof of the motive to escape taxation, to give evidence that the plaintiff did escape taxation; and the amount of taxation which he escaped is material.

*G. F. Hoar & H. C. Hutchins*, for the plaintiff.

COLT, J. The plaintiff's right to recover back the tax paid by him to the city of Boston depends on whether he was, within the meaning of the statute, an inhabitant of that city on May 1, 1876, and subject to taxation there. Gen. Sts. *c.* 11, § 12. The case requires the application of those rules which determine where a citizen is legally taxable, who has more than one place of residence in this state, situated in different municipalities, in each of which he lives with his family for a part of each year.

Only so much of the evidence at the trial as was thought necessary to present the questions of law raised by the defendant's requests for instructions, and by the exceptions taken to the exclusion of evidence, is reported. The judge declined to give the instructions requested, except so far as they were embraced in the instructions given; and, by the terms of the report, judgment is to be entered on the verdict for the plaintiff, unless there was error in the refusal to instruct the jury as requested, or the evidence offered was improperly excluded. The discussion is limited to these points.

The jury, under the instructions which were given, must have found that the plaintiff, after 1869, and before May 1, 1876, when this tax was assessed, with an honest intention to change his domicil or permanent residence from Boston to Lancaster, to make the latter the place of his permanent and real home, as distinguished from a mere place of temporary summer resort, did acts which amounted to such change, and made himself an inhabitant of Lancaster. The weight of the evidence on which this finding was made is not for our consideration. This is not a motion to set aside a verdict as against the weight of evidence, and it is enough upon this report that we cannot, as a matter of law, declare that the evidence would not, under the instructions given, justify the finding. The question remains whether the instructions requested ought to have been given, in whole or in part, or ought to have been given in the language requested.

The statute declares that all personal property "shall be assessed to the owner in the city or town where he is an inhabitant on the first day of May." By the decisions of this court it is held that in cases of this description the inhabitancy which fixes the place of taxation must be practically equivalent to that legal residence which establishes the domicil of the tax-payer, although the words do not always have precisely the same meaning. *Briggs* v. *Rochester*, 16 Gray, 337. The Constitution of this Commonwealth declares that, to remove all doubts concerning the meaning of the word "inhabitant," "every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office or place within this state, in that town, district or plantation where he dwelleth or hath his home." Const. Mass. *c.* 1, § 2, art. 2.

It is always a question of fact where the place of a man's domicil is. As to most persons it is determined at once by the decisive facts which show permanent and unchanging residence in only one place. As to such persons, the question of domicil, that is, the question where they are to be taxed, or where they have a right to vote, presents no difficulty. There can be no right of election to the tax-payer between two places, when one is already fixed by the actual facts which go to establish domicil. It is only when the facts which establish permanent residence and domicil are ambiguous and uncertain, in the absence of any settled abode, and when the real intention of the party cannot be ascertained, that the question becomes difficult. It may then require an examination into the motives of the man, his habits and character, his domestic, social, political and business relations, for a series of years; and the answer will depend in the end upon the weight of evidence in favor of one of two or more places. It is evident that, with the increasing number of those who live each year in different places, the increased facilities for travel, and the great temptation to escape taxation by a change of domicil, cases of the latter description are becoming more common.

It is said to be difficult, if not impossible, to give an exact and comprehensive definition of domicil. No test which can safely be applied to all cases has yet been established. In *Lyman* v. *Fiske*, 17 Pick. 231, 234, it was said that, "in general

terms, one may be designated as an inhabitant of that place, which constitutes the principal seat of his residence, of his business, pursuits, connections, attachments, and of his political and municipal relations. It is manifest, therefore, that it embraces the fact of residence at a place, with the intent to regard it and make it his home. The act and intent must concur, and the intent may be inferred from declarations and conduct." "But such an election to be taxed in one town rather than another is only one circumstance bearing upon the question of actual habitancy, and to be taken in connection with the other circumstances, to determine the principal fact." In *Sears* v. *Boston*, 1 Met. 250, it was declared that "actual residence, that is, personal presence in a place, is one circumstance to determine the domicil, or the fact of being an inhabitant; but it is far from being conclusive. A seaman on a long voyage, and a soldier in actual service, may be respectively inhabitants of a place, though not personally present there for years. It depends therefore upon many other considerations besides actual presence." In *Briggs* v. *Rochester*, 16 Gray, 341, it was said that "the words 'where he shall be an inhabitant on the first day of May,' mean where he shall have his home on that day." In *Otis* v. *Boston*, 12 Cush. 49, that "a man is properly said to be an inhabitant where he dwelleth and hath his home." In *Abington* v. *North Bridgewater*, 23 Pick. 170, 177, 178, that "it depends not upon proving particular facts, but whether all the facts and circumstances taken together, tending to show that a man has his domicil or home in one place, overbalance all the like proofs, tending to establish it in another;" and that "if we adopt the definition from the Constitution, which seems intended to explain the matter and put it beyond doubt, it will be found, on examination, to be only an identical proposition, equivalent to declaring, that a man shall be an inhabitant where he inhabits, or be considered as dwelling or having his home, where he dwells or has his home. It must often depend upon the circumstances of each case, the combinations of which are infinite. If it be said to be fixed by the place of his dwelling-house, he may have dwelling-houses in different places; if it be where his family reside, his family with himself may occupy them indiscriminately, and reside as much in one as another; if it be where he lodges or sleeps, (*pernoctat*,) he

may lodge as much at the one as the other." See also *Thorndike* v. *Boston*, 1 Met. 242, 245; *Harvard College* v. *Gore*, 5 Pick. 370; *Blanchard* v. *Stearns*, 5 Met. 298; *Opinion of Justices*, 5 Met. 587; *Williams* v. *Roxbury*, 12 Gray, 21.

It is evident that the choice of the tax-payer, as between two places of residence, is an element to be considered in determining which is the real domicil; but a choice in favor of one place will not be permitted to control a preponderance of evidence in favor of another. The place of domicil, upon which so many important municipal obligations and privileges depend, is not left by the law to the choice of the citizen, except only as such choice may give character to existing relations and accompanying acts of residence which are not in conflict with it. As between different places, it may depend on a mass of evidence, which will generally include as one of its items the declared intention and choice of the party himself. The weight to be given to that intention, however honest, will depend largely upon the condition of all the evidence. If the evidence be equivocal and uncertain, then the choice may be sufficient to turn the scale; if the weight of it be one way, then an opposite intention or wish will be of little or no avail. *Holmes* v. *Greene*, 7 Gray, 299.

The true rule was plainly recognized in *Chenery* v. *Waltham*, 8 Cush. 327. The judge was there asked by the plaintiff, who sought to recover back a tax paid to the defendant, to rule that if the true dividing line between two towns passed through an integral portion of the dwelling-house occupied by him and his family, then he had a right to elect in which town he would be assessed on his personal property and become a citizen. This was refused, and it was ruled that if the house was so divided by the line as to leave that portion of it in which the occupant mainly and substantially performed those acts and offices which characterized his home (such as sleeping, eating, sitting and receiving visitors) in one town, then the occupant would be a citizen of that town, and no right of election would exist; and that, if the house was so divided by the line as to render it impossible to determine in which town the occupant mainly and substantially performed the acts and offices before referred to, then the occupant would have a right of election, and his election would be binding on both towns. The rule thus laid down

was declared by the full court to be sufficiently favorable to the plaintiff, on the question of his right to elect.

In the law of domicil, it is settled that a person can have but one domicil at the same time, for the same purpose; that domicil, once acquired, remains until a new one is acquired; and that a new one is acquired only by a clear and honest purpose to change, which is carried into actual execution. Applying these maxims to the facts, in all disputed cases, it is the duty of the court to submit each case to the jury with instructions adapted to its peculiar aspects.

Upon a careful examination, we are satisfied that the instructions here requested, so far as they were not substantially given by the judge in his charge, were properly refused. The jury were told that the plaintiff must prove all the facts necessary to make out his case, including the fact that he was not an inhabitant of Boston on the first of May, 1876. They could not have been properly instructed that he was *primâ facie* such inhabitant " if he and his family were on that day living in a house of his own, in the same way in which he had lived in Boston during those years in which he admits he had been a taxable inhabitant of Boston," for such instruction was calculated to mislead the jury by excluding from their consideration the evidence of inhabitancy acquired in Lancaster. It would be stating a conclusion from one item of evidence bearing on the question, which is not in itself conclusive. The third request was therefore properly refused.

The fourth and seventh requests were embraced in the instructions, " that the mere intention of purpose formed or expressed to change his home is not enough; he must do something which actually works a change of home. The act of change and the intention must concur."

The first part of the fifth request was given, and the judge was not required to give the definition of " home " contained in the last part. The principal place of abode of a man and his family, when it is only a temporary abode, is not his home in the sense here required.

The sixth request was properly refused, because the single fact of residence on the first of May, in the popular meaning of that word, is not conclusive on the question of inhabitancy or domicil.

The eighth request was for an instruction that the facts therein recited were conclusive on the question of domicil, and left out of view all the evidence in the case which might possibly control those facts.    It was properly refused.

The instructions which were given to the jury recognize in their whole tenor the rules of law applicable to the facts in this case.    And the report does not reserve to the defendant the right to except to the phraseology of each sentence in the instructions given to the jury, but only the question whether there was error in the rulings on evidence which were excepted to, or in the refusals to instruct the jury as requested by the defendant.

The exceptions taken to the exclusion of evidence require brief consideration.    On cross-examination, the plaintiff was asked, "What amount of personal property had you on the first of May, 1868, not exempt from taxation?"    This question was answered.    He was then asked "What amount of personal property had you?" and, upon his declining, the court refused to order him to answer.    The next question objected to was as to how much tax the witness paid at the West on certain railroad stock there.

The exceptions to the refusal of the court to permit these questions cannot be sustained.    The issue was whether the plaintiff, on the first of May, 1876, was an inhabitant of Boston.    The motive which induced him to change to Lancaster was not material to that issue.    A man may change his residence for the purpose of reducing taxation only, although he will be subject to a penalty if he escapes taxation by designedly changing or concealing his residence for that purpose.    St. 1864, c. 172.    The wish to change for that purpose does not tend to show any want of a real intention to change, but rather the contrary.    As bearing on the honesty of his purpose to change his residence, the plaintiff was required to state what amount of taxable personal property he had on the first of May, 1868, but the inquiry, what was the whole amount of his personal property, was quite different, and had more remote bearing on the case.    The extent to which a witness may be cross-examined upon facts which appear to be material, only as showing his bias or testing his accuracy or credibility, is largely a matter within the discretion of the court, to the exercise of which no exception lies.    *Com-*

*monwealth* v. *Kelley*, 113 Mass. 453; *Commonwealth* v. *Lyden*, 113 Mass. 452. *Miller* v. *Smith*, 112 Mass. 470.

*Judgment on the verdict.*