## Commonwealth ex rel. Fortney *v.* Bobrofskie, Appellant.

Argued November 24, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. A. Welsh,* with him *John Kopyscianski,* for appellant.

*William I. Troutman* and *Robert M. Fortney,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 24, 1938:

By the judgment of the court below in a quo warranto proceeding appellant was removed from office as a member of the board of commissioners of Coal Township, Northumberland County, because the court found he was not a resident of that township at the time of his election and had not been for the preceding year, as required by law. The only question for consideration, therefore, is whether the court's determination of residence was correct.

Coal Township is a first class township having thirteen wards. The First Class Township Law of June 24, 1931, P. L. 1206, sec. 504, as amended by the Act of July 18, 1935, P. L. 1312 (53 PS sections 19092-504), provides that in such townships "one commissioner shall be elected from each ward. Commissioners shall reside in the ward from which elected, and shall have resided in said ward continuously for at least one year before their election." Appellant was elected to represent the *seventh* ward, or Excelsior District, of the township on November 5, 1935. In this proceeding, brought by the district attorney of the county, it was contended that at that time and for many years prior thereto appellant resided in the *ninth* ward, or Johnson City District, and hence was ineligible to hold the office in question. The court below so held, after a hearing at which both parties presented evidence. There was little or no dispute as to the facts to which the various witnesses testified. The controversy is as to the conclusion to be drawn from them.

In cases such as this, "residence" approximates domicile in meaning: *Chase v. Miller*, 41 Pa. 403, 420; *Fry's Election Case*, 71 Pa. 302. Hence the decisions dealing with domicile as applicable to varying situations and circumstances are relevant. As was said in *Dorrance's Estate*, 309 Pa. 151, 156, 163 A. 303: "The determination of . . . domicile in this appeal is a conclusion of law, based upon facts, most of which are undisputed." See also *Pusey's Estate*, 321 Pa. 248, 184 A. 844.

It was not disputed that appellant was born in the seventh ward, that he resided there in his mother's household up to the time of his marriage in 1929, and that he was registered and always voted in that ward and not in the ninth ward. He also received most of his mail at his mother's residence. Upon his marriage he continued to reside for a time with his mother, while his wife lived with hers, apparently until a common household could be maintained by them. In 1933 he built a house in the *ninth* ward, adequate for the needs of his family. His wife and children moved into the new home in January, 1934, and have resided there ever since. Appellant admits this to be the fact, and that he frequently sleeps in the home and keeps his automobile in the garage there, but he denies that *he* resides with his family. This arrangement was entered into by his wife and himself, he says, because his wife evinced a desire to reside in "Johnson City," where their children could attend parochial schools. He complied with her request and built her a house there. He and his wife are on the most friendly terms. His mother-in-law resides with his wife in the *ninth* ward home *the greater part* of the time. Appellant and his wife often entertain guests there. When one of the children died, the funeral was conducted from *that residence*. It was shown, on the other hand, that appellant attends church and pays his church dues in the *seventh ward*, and buys provisions for his mother's home from a local merchant there.

Various residents of both communities testified that they had seen appellant frequently at one or the other dwelling place, that is, at his mother's home in the seventh ward or his wife's home in the ninth ward. Unquestionably he spends part of his time at each place, and probably sleeps at the home which most suits his convenience at a particular time. His place of business, which is a partnership engaged in running a hotel and pool room, is near his mother's home and undoubtedly he is free to stay there as often as he pleases, although he does not own the property where his mother resides as he does the home in the ninth ward where his wife and children reside. There was no evidence conclusively establishing what proportion of his daily life is spent in either place, or where he kept his clothes or took most of his meals. It is significant, however, that no member of his family—his wife and mother-in-law, who live in the ninth ward, on the one hand, and his mother and brother, who reside in the seventh, on the other—was called to testify for appellant. These were the persons most closely acquainted with the details of appellant's daily life. Under the circumstances stated, the weight of the evidence tends to show, as found by the trial judge, that appellant abandoned his home in the seventh ward and established a new one in the ninth ward, to which he and his family moved and where they have since resided as a family unit. The record shows a close family relationship between appellant and his wife and children, and where the residence of those members of his family in the *ninth* ward is not disputed and it is shown that appellant had his "daily habitation" there at least as much as elsewhere, one is strongly convinced of appellant's intent to make that "his true, fixed and permanent home and principal establishment, . . . to which, whenever he is absent, he has the intention of returning": *Price v. Price,* 156 Pa. 617, 626, 27 A. 291; *Fry's Election Case,* supra.

Appellant's declarations of an *intention* to retain his domicile in the seventh ward are ineffective to make that his domicile within the contemplation of law. The fact that he voted in one district rather than the other was, in a situation such as this, little more than a matter of personal convenience. It is clear that appellant wished to make his family home in the ninth ward yet retain a legal residence in the seventh ward. But the actuality of a man's residence is often better determined by his conduct than by his words.

As this court said in *Dorrance's Estate,* supra, 309 Pa., at page 165: "With a few scattered expressions to the contrary, the law is generally settled that, as regards the determination of domicile, a person's expression of desire may not supersede the effect of his conduct. 'Apart from possible exceptions, a man cannot retain a domicile in one place when he has moved to another and intends to reside there for the rest of his life, by any wish, declaration or intent inconsistent with the dominant facts of where he actually lives and what he actually means to do': *National City Bank v. Hotchkiss,* 231 U. S. 50, 56; *Dickinson v. Brookline,* 181 Mass. 195. See also *Thayer v. Boston,* 124 Mass. 132. 'Every person must have a domicile somewhere and a man cannot elect to make his home in one place for the general purposes of life, and in another place for the purposes of taxation': *Feehan v. Tax Commissioner,* 237 Mass. 169, 171. 'A declaration [as to domicile] that is self-serving and not followed by acts in accordance with the declaration will not be regarded as conclusive, but will yield to the intent which the acts and conduct of the person clearly indicate': *In re Paris's Est.,* 176 N. Y. S. 879, 882."

Our conclusion is that the ruling of the court below, holding that appellant did not reside in the ward for which he was elected, was amply sustained by the evidence, and that the judgment of ouster was properly entered.

The judgment is affirmed.