## Van Vliet et ux. v. Blatt et al.

*Thomas C. Cochran*, for plaintiffs.

*Thomas H. Armstrong* and *Walter H. Scott*, for defendants.

BRAHAM, P. J., fifty-third judicial district, specially presiding, February 23, 1944.—In this action for personal injuries suffered by the female plaintiff by a fall in defendants' theatre, defendants have obtained a rule upon plaintiffs to show cause why security for costs should not be furnished. This relief is sought under Rule 20, sec. 1, of the Rules of Court of Mercer County, which reads as follows:

"If the plaintiff in any cause resides without the state or removes therefrom, a defendant, upon filing an affidavit of defense to the whole of the plaintiff's demand or entering an appearance in a trespass action, may have a rule, as of course, on the plaintiff to enter security for costs within thirty days after service of the rule, and in the meantime proceedings shall be stayed . . ."

Do plaintiffs reside within the State of Pennsylvania? This is the question for our decision. Depositions have been taken by both sides. Plaintiffs' statement of claim avers plaintiffs to be residents of Wilmington Township, Lawrence County, Pa. The depositions of defendants, consisting of the testimony of a number of persons living in the Borough of New Wilmington which is adjacent to Wilmington Township, tend to show that plaintiffs never have been residents of Wilmington Township. Standing alone this evidence is lacking in persuasive power because it is negative in character. The witnesses did not live nearer than about three miles from the place of residence

claimed by plaintiffs, and no close neighbors of plaintiffs were called. The depositions of but two witnesses were taken on behalf of plaintiffs. These were Peter May and his wife Mary, at whose house plaintiffs claim to have a residence.

From this testimony we find that plaintiffs are Hollanders by birth and acrobats by profession. For many years they toured Europe giving acrobatic exhibitions, for a time accompanied by William May, a son of Peter and Mary May. The war came and the Van Vliets desired to come to America. It does not appear clearly whether they were quota or nonquota immigrants but it is clear that in order to obtain entry into the United States it was necessary for them to have a home in this country to which they might come. Peter May was the person who stood sponsor for them and to his home in Wilmington Township, Lawrence County, they came. By virtue of the Act of Congress, approved June 28, 1940, 54 Stat. at L. 670, sec. 31, 8 U. S. C. §452, it became the duty of every alien to register, giving his address. Under section 35 of the same act, 8 U. S. C. §456, the alien is required to notify the Commissioner of Immigration of any change of address. Plaintiffs registered under the Alien Registration Act, giving as their address "Care of Peter May, R. D. No. 5, New Castle, Pa." The registration cards which were produced in evidence do not indicate the date of such registration.

In December of 1940, plaintiffs came to the home of Peter May, where they remained for about three months, during which time Anton Van Vliet assisted Peter May in some carpenter work on his cottages and Mrs. Van Vliet helped a little about the house. At the end of the three months plaintiffs went to New York where Anton Van Vliet secured employment in a Dutch chocolate factory in which he has worked ever since. He became a valuable employe because, during

the summer of 1943, he served as acting manager during the absence of the manager. During the summers of 1941 and 1942 plaintiffs spent from one and a half to two months at Peter May's home. During the summer of 1943 they spent about three weeks there, this visit being cut short by the recall of Mr. Van Vliet to act as manager of the chocolate factory.

At Peter May's plaintiffs never have had any interest in the real estate; they never entered into any lease with the Mays; they owned no personal property there except casual items and left nothing in their absence; no special room was reserved for them. In New York plaintiffs have resided in a rented apartment, apparently a furnished apartment, and always the same one. There they had no furniture except some small things but there they resided during the 10 or 11 working months of each year.

The Mercer County rule provides for security for costs where plaintiff resides without the State or removes therefrom. The dictionary definition of "reside" is "to dwell permanently, or continuously; to have a settled abode for a time". "Residence" is defined as "the place where one actually lives or has his home; a person's dwelling place or place of habitation". In the A. L. I. Restatement of Conflict of Laws, §13, home is defined as "a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place".

One of the material elements in the determination of the question of domicile is the intention with which the home is located.

"A person cannot change his domicil by removal to a new dwelling-place without an intention to make the new dwelling-place his home": A. L. I. Restatement, Conflict of Laws, §18.

"The intention required for the acquisition of a domicil of choice is an intention to make a home in fact, and not an intention to acquire a domicil": Idem, §19.

"For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future": Idem, §20.

Applying these principles to the case at bar we conclude that when plaintiffs left Holland to come to the United States they intended to make their home here and intended their home to be their domicile. They located at Peter May's and for three months that place was both their home and their domicile. Their intention to make a domicile was indicated by the papers filed with the Alien Registration Commissioner; their intention was carried into effect by a physical settlement in the home of the Mays. It was the only home they knew, driven as they were from their shattered homeland by war.

When plaintiffs went down to New York to locate employment they found work and established a home near their work. They settled down in an apartment, where they have lived ever since. Here their lives have been lived day by day; to this place they have brought apparently all their clothing and so nearly everything of consequence that neither Mr. or Mrs. May could recall anything of plaintiffs which remained at their home. All the facts indicate that this place of plaintiffs in New York is both their home and their domicile. It is near to the work of the husband, a position so important that he may upon occasions be called upon to run the plant.

As against the fact of the settled home in New York, there is the apparently persevering intention of the Van Vliets to continue a domicile in Wilmington Township, Lawrence County, Pa. For a portion of the time

in the summer they come to live with the Mays. Which is the decisive factor, the fact of a settled abode in New York or the declared intention to have a domicile in Lawrence County, Pa., coupled with temporary residence in the summertime?

A very illuminating case on this subject is Commonwealth ex rel. Fortney v. Bobrofskie, 329 Pa. 44, in which the right of respondent to act as a township commissioner was in question. He lived with his parents in the seventh ward of the township until his marriage. He then built a residence in the ninth ward, to which his wife and children moved. He received most of his mail at the home in the seventh ward and voted in that ward. He denied that his domicile was in the ninth ward. On this point the court, by Chief Justice Maxey, said (p. 48) :

"Appellant's declarations of an *intention* to retain his domicile in the seventh ward are ineffective to make that his domicile within the contemplation of law. The fact that he voted in one district rather than the other was, in a situation such as this, little more than a matter of personal convenience. It is clear that appellant wished to make his family home in the ninth ward yet retain a legal residence in the seventh ward. But the actuality of a man's residence is often better determined by his conduct than by his words".

The Dorrance of Dorrance's Estate, 309 Pa. 151, was a resident of New Jersey, where he had made a large fortune. He built another home in an exclusive section of Pennsylvania, where his family lived most of the time, retaining, however, the home in New Jersey where they occasionally spent some time. The court, upon an examination of all the facts, concluded that his domicile was in Pennsylvania and his estate therefore taxable in Pennsylvania. The court, speaking by then Chief Justice Frazier, said (p. 165) :

"With a few scattered expressions to the contrary, the law is generally settled that, as regards the deter-

mination of domicile, a person's expression of desire may not supersede the effect of his conduct. 'Apart from possible exceptions, a man cannot retain a domicile in one place when he has moved to another and intends to reside there for the rest of his life, by any wish, declaration or intent inconsistent with the dominant facts of where he actually lives and what he actually means to do': National City Bank v. Hotchkiss, 231 U. S. 50, 56; Dickinson v. Brookline, 181 Mass. 195. See also Thayer v. Boston, 124 Mass. 132. 'Every person must have a domicile somewhere and a man cannot elect to make his home in one place for the general purposes of life, and in another place for the purposes of taxation': Feehan v. Tax Commissioner, 237 Mass. 169, 171. 'A declaration [as to domicile] that is self-serving and not followed by acts in accordance with the declaration will not be regarded as conclusive, but will yield to the intent which the acts and conduct of the person clearly indicate': In re Paris's Est., 176 N. Y. S. 879, 882''.

The two decisions of the Supreme Court of Pennsylvania above cited relate to cases in which the owner lived upon his own land. In the present case neither in Wilmington Township nor New York City did the Van Vliets own any land. Yet the same principles operate. On the one hand we have a declared intention to establish a domicile with only the most casual and a seasonal occupation. On the other hand we have the establishment of a home; the apartment was apparently leased; the plaintiffs had an estate of some sort. To put the case baldly, let us suppose plaintiffs had rented one of the Mays' summer cottages and also an apartment in New York. They lived in New York during the principal part of the year; there the living was earned and the ordinary affairs of life transacted. When summer came, for rest and relaxation they went to Wilmington Township and lived on the banks of the Neshan-

nock. The principles stated in the Fortney and Dorrance cases would compel us to examine the facts concerning their life at each place and determine where their domicile is and ultimately would compel a conclusion that the domicile was in New York. Our actual case is substantially weaker in that plaintiffs have no estate of any kind in the May home; they were merely welcome guests, summer boarders. The rule of these cases is decisive: "a person's expression of desire [as to his domicile] may not supersede the effect of his conduct".

Counsel for plaintiffs has argued strongly that a domicile of choice once established is presumed to continue. We recognize this fact and conclude that they established a domicile at the May home when they came from Holland. The facts of their subsequent life indicate that they established a new domicile to which effect must be given.

It is the purpose of the Mercer County rule of court to secure to defendants protection from liability to costs incurred by plaintiffs who live without the State and are financially irresponsible. If a person lives within a State the presumption of the law is that by reaching his property or his person in some fashion the costs may be realized. If he has a home here it is presumed he will return to it; if he has property here he must look after it. But plaintiffs have no property at Peter May's to which they must return and there is nothing at all to impel them to return except a sense of gratitude for the favor done them in their hour of need. There is, of course, one other reason. They have registered with the department that their home is at Peter May's. This registration may, however, be changed by writing a letter.

The cases cited by plaintiffs, Barclay's Estate, 259 Pa. 401, and Pusey's Estate, 321 Pa. 248, are not controlling. Barclay's Estate seems in effect to have been

reversed by the ruling in the cases of Commonwealth ex rel. Fortney v. Bobrofskie, supra, and Dorrance's Estate, supra. Estate and other taxations have rendered the importance of a domicile, particularly a domicile of choice, more important in recent years. This we apprehend is the reason for the difference between Barclay's Estate and Dorrance's Estate. The rule of Pusey's Estate is well established and we have no quarrel with it. The burden is on one seeking to show a change in domicile. The facts in the present case disclose such a change.

Entertaining these views we make the following

### Order

Now, February 23, 1944, the rule to give security for costs issued upon plaintiffs on September 24, 1943, is made absolute and plaintiffs are directed to give bond for security approved by the court in the sum of $300.