## Danisch License

*C. D. Shull,* for appellants.

*Paul R. Selecky,* Special Deputy Attorney General, for Pennsylvania Liquor Control Board.

DAVIS, P. J., February 3, 1950.—This matter comes before the court on appeal of Eric F. and Augusta H. Danisch from an order of the Pennsylvania Liquor Control Board dated October 27, 1949, refusing a hotel liquor license and amusement permit in Pocono Township, Monroe County, Pa. The only reason set forth for refusing the liquor license and amusement permit is set forth as follows:

"The board is not satisfied that applicants have been residents in the Commonwealth of Pennsylvania for the period of at least three years immediately preceding the time of the application, as is required by law."

Under the opinion of the board and the testimony on behalf of the board before the court, there is only one question to be determined. Had the applicants been residents of the Commonwealth of Pennsylvania for a period of at least three years immediately pre-

ceding the time of application? From the evidence produced at the hearing de novo before the court we find the following facts:

*Findings of Fact*

1. Prior to May 1946 applicants were residents of Summit, N. J.

2. Eric F. Danisch, one of the applicants, was engaged in the delicatessen and grocery store business and also sold packaged liquor in Summit, N. J.

3. Eric F. Danisch owned the property in Summit, N. J., in which the business was conducted and in which there also were located several apartments.

4. In May 1946 the business was sold for the sum of $45,000.

5. On May 25, 1946, applicants bought a property in Pocono Township, Monroe County, Pa., known as "Bill's Lake". The improvements consisted of a farm house and an old barn of little value.

6. Shortly thereafter applicants moved to the property in Monroe County, bringing with them all of their personal belongings, household goods and equipment.

7. Repairs and improvements were made to the farm house and in addition a hotel building approximately 110 feet by 60 feet was erected as well as a cottage containing six bedrooms. Applicants have an investment in this property in excess of $100,000.

8. The property has been operated as a summer resort hotel since 1947.

9. Both applicants have devoted their entire time and attention to the hotel business during the season in Monroe County.

10. During the winters of 1947-48 and 1948-49 Eric F. Danisch was employed in New York City from about Christmas to the end of February or middle of March for the purpose of supplementing the income

from the business in Monroe County, and while so employed live in an apartment in the building which he still owns in Summit, N. J.

11. Upon coming to Monroe County a bank account was opened in the Stroudsburg Security Trust Company where it has been maintained to the present time.

12. Augusta H. Danisch affiliated herself with the church of her faith in Mount Pocono, Pa.

13. After coming to Monroe County neither party voted either in Pennsylvania or New Jersey prior to 1948.

14. In September 1948 the parties attempted to register in Monroe County for the purpose of voting at the November presidential election and were informed that the time had expired for the registration to vote in this election.

15. The parties then returned to Summit, N. J., on Election Day, voted in the presidential election, and returned to Monroe County the same day.

16. After coming to Monroe County counsel for the parties explained to them that to obtain a hotel liquor license it would be necessary to either incorporate or be a resident of the State of Pennsylvania for three years before application for a license could be made.

17. It was the intention of Eric F. and Augusta H. Danisch to become residents of Pennsylvania when they moved from Summit, N. J., to the hotel property in May 1946.

18. Eric F. and Augusta H. Danisch became residents of Monroe County, Pa., in May 1946, and have continued to be residents until the date of hearing.

### Discussion

The requirements of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 PS §744-402, as to residence is as follows:

"If the applicant is a natural person, his application must show that he is a citizen of the United States and has been a resident of this Commonwealth for at least three years immediately preceding his application."

The burden is upon applicants to prove that they were residents of the Commonwealth for at least three years immediately preceding their application: Re Application of Earle, 2 Monroe 1.

To show lack of residence in Pennsylvania the board relies on two undisputed facts as follows:

1. That Eric F. Danisch worked in New York approximately two and one-half months in the winters of 1947-48 and 1948-49 and lived with his wife in Summit, N. J., during the period he worked in New York City.

2. That both Eric F. and Augusta H. Danisch voted at Summit, N. J., in the presidential election of 1948.

We accept the definition of residence as cited by the board as follows:

"It means that place where the elector makes his permanent or true home, his principal place of business, and his family residence, if he have one; where he intends to remain indefinitely, and without a present intention to depart; when he leaves it he intends to return to it, and after his return he deems himself at home": Fry's Election Case, 71 Pa. 302, 309-310.

In Monroe County it is common practice for summer resort owners or operators to conduct a similar business in the South or obtain employment elsewhere during the winter months. The reason for this practice is apparent. With the summer resort hotels closed the operator is faced with the alternative of idleness or work elsewhere. The applicant said he obtained temporary employment in the city because he could not afford to be idle. In view of his investment in the county this statement appeals to reason. We would

conclude that the time spent in the city during the winter does not indicate an intention to abandon residence in Monroe County. Since it was necessary to live somewhere in the vicinity of the city it would seem natural and logical for applicants to return to the apartment which Mr. Danisch owned in Summit, N. J. If the apartment had been maintained throughout the year only for the purpose of occupying it two or two and one-half months that might indicate that the parties considered it their permanent or true home. However, the applicant explained that due to rent control regulations renting was not particularly advantageous and besides he felt that since he was trying to sell the property a vacant apartment would be an inducement for the sale. In our minds this is a reasonable explanation for the keeping of the apartment, not inconsistent with residence in Monroe County, Pa.

We pass to the next question. Does the fact that the parties voted in Summit, N. J., in 1948, indicate that their actual residence was in New Jersey? To vote in a State in which a person is not a resident is both legally and morally wrong and will not be condoned by this court. However, that matter is not before the court in this proceeding. If the ballot had been cast in a local election it well might indicate that the home ties in that community had not been severed; that there was the place the parties intended to return to when they left to come to Monroe County. A vote in a presidential election does not bear the same implication. Unless these parties understood the technical method of electing a President, and we doubt that they did, they well might have believed that there could be no difference in effect on the presidential election whether they voted in Pennsylvania or New Jersey.

Voting in New Jersey is evidence of residence in New Jersey. Attempting to register as voters in

Pennsylvania is evidence of residence in Pennsylvania. In our opinion, under the circumstances in this case, the one balances the other.

The appellate courts have said that voting is not a controlling factor in establishing residence.

"The fact that he voted in one district rather than the other was, in a situation such as this, little more than a matter of personal convenience. It is clear that appellant wished to make his family home in the ninth ward yet retain a legal residence in the seventh ward. But the actuality of a man's residence is often better determined by his conduct than by his words": Commonwealth ex rel. Fortney v. Bobrofskie, 329 Pa. 44, 48.

Considering the expressed intention of the parties, their ownership of property and large investment in Monroe County, the time spent in the county establishing their business and home, together with the fact that they sold their business in New Jersey and moved all of their belongings to Monroe County, we are convinced that in 1946 they intended to and did establish their permanent and true home in Monroe County. We saw them and observed their conduct. We conclude that they told the truth.

### Conclusions of Law

Eric F. and Augusta H. Danisch became residents of Pocono Township, Monroe County, Pa., in 1946, and continued residence in Pennsylvania until the hearing before the court on December 5, 1949.

And now, February 3, 1950, the appeal of Eric F. and Augusta H. Danisch is sustained and the Pennsylvania Liquor Control Board is directed to issue a hotel liquor license and amusement permit to Eric F. and Augusta H. Danisch for the premises described in the application from which the appeal was taken.