## Christman Appeal

*Sherman K. Levine*, for Commonwealth.

*George F. Mahaney*, for appellant.

McKay, J., February 25, 1957.—James A. Christman, Jr., has appealed from an order of the Pennsylvania Liquor Control Board dated December 21, 1956, refusing his application for the transfer of a hotel liquor license. The reason given by the board for its refusal was that applicant does not meet the requirement of the Liquor Code of April 12, 1951, P. L. 90, that he be a resident of the Commonwealth for the two years preceding the application.

At the hearing, which was held de novo on February 1, 1957, the uncontradicted evidence disclosed the following facts which are pertinent to applicant's residence for the period in question.

For several years prior to 1952, applicant and his wife had been residents of the City of Farrell. They lived in a house owned by them at 1158 Wallis Avenue and were the licensed operators of a hotel at 934 Market Street, the place which is the subject of the present application.

In July 1952, they sold their business and transferred the license to their son, James A. Christman, 3rd, who still operates the business. In the fall of 1952, Mrs. Christman went to Los Angeles, California, in search of health for a younger son, Russell, who suffered from asthma. The boy found relief there, and the mother and son continue to reside in California, where she is employed as an investigator for the county relief authorities. Applicant continued to reside in Farrell and helped his son. He was also interested in a garage business. He and his wife did not give up title to the real estate where the hotel is located.

In the spring of 1953, applicant joined his wife and younger son in Los Angeles and obtained employment in a garage. A month later he returned to Farrell, sold his home to his brother and sister-in-law and returned to California. He purchased a home in Los Angeles, taking title jointly with his wife. He acquired the garage business where he worked, jointly with co-employes, and engaged in that business until August, 1955, when he returned to Farrell to stay. Since that date, he continued to reside in Farrell. During 1953, 1954 and 1955, he joined his wife in filing wage tax returns in Los Angeles. His wife registered to vote there. The above facts would tend to confirm the opinion of the board that during the two years prior to the date of his application for transfer, June 4, 1956, applicant was a resident of California, rather than of Pennsylvania.

There are other facts, however. Applicant voted in Farrell in the spring of 1953. Between 1953 and August 1955, when he returned to Farrell permanently, he came back about five or six times a year for the purpose of checking on his personal affairs. He continued to own the building where the tavern is located and kept his interest in the garage business. On these occasions he remained in Farrell from one week to as long as 35 days. In 1953, when he sold his home in Farrell to his brother and the latter's wife, which he said was to finance the California trip and the purchase of the house there, he reserved for his own use the front room which he and his wife had formerly occupied where he kept all of his clothes, his bedroom furniture, his papers and most of his personal effects. Applicant owned a Plymouth automobile which was licensed in Pennsylvania, although another car, jointly owned but used by the wife, was registered in California. Applicant had an automobile operator's license in both

States. He retained his membership in the Sharon Church of God and the Farrell Lodge of Elks. He paid both personal and occupation taxes in the City of Farrell for the years 1953 and 1954. This tax was not in effect in 1955. In the spring of 1953, he voted in Farrell. He did not register to vote in California. He testified that he never intended to establish his permanent home in California, but, on the contrary, always considered Farrell as his home. This intention is corroborated to some extent by his return in August, 1955, and his continued residence in Farrell since that time.

It is clear from all of the evidence that while Mrs. Christman desires and presumably intends to make California her home, principally because of her son's health, applicant has not shared this intention but instead has always continued to regard Farrell as his permanent home. His temporary residence in California was principally for the purpose of assisting his wife and son to get established there.

Under the above facts, if the word "residence" as used in the Liquor Code is to receive a strict and narrow interpretation, it could well be concluded that from the spring of 1953 until August of 1955, applicant resided in California. On the other hand, if the word "residence" is to be construed as synonymous with "domicile", there can be no doubt that during this period applicant was domiciled and therefore "resided" within the Commonwealth of Pennsylvania. His original domicile was admittedly Pennsylvania and there is no evidence that he ever intended to abandon it.

It is well established that a domicile having been once established is presumed to continue until another domicile is affirmatively proved: Barclay's Estate, 259 Pa. 401; Dorrance's Estate, 309 Pa. 151; Pusey's

Estate, 321 Pa. 248. In Price v. Price, 156 Pa. 617, at page 626, the Supreme Court stated:

"Domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of abandoning the domicile of origin."

Similarly, in Davis v. Davis, 91 Pa. Superior Ct. 354, the Superior Court stated, at page 362:

"Having been domiciled in Philadelphia that domicile must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of abandoning the domicile of origin. This change must be by animo et facto and the burden of proof is on the party who asserts the change."

The present case hangs, therefore, on whether the word "residence" as used in the Liquor Code should be construed to mean "domicile". As noted in the above cited cases, the Supreme Court so construed the word residence in the Fiduciaries Act. A similar construction was also placed by the Supreme Court upon that word in the First Class Township Law, which requires that township commissioners shall reside in the ward for which they are elected for at least one year before their election: Commonwealth ex rel v. Bobrofski, 329 Pa. 44. In that case the court stated, at page 46:

"In cases such as this, residence approximates domicile in meaning: Chase v. Miller, 41 Pa. 403, 420; Fry's Election Case, 71 Pa. 302. Hence the decisions dealing with domicile as applicable to varying situations and circumstances are relevant."

In pressing its position that residence does not mean domicile, the Commonwealth assumes that the purpose of the residence requirement in the code was to enable the board to ascertain, by inquiry of the persons living in the Commonwealth whether applicant is a person of good repute, as sections 102 and 404 of the act provide

that he be. It points out that investigators of the board have jurisdiction only within Pennsylvania, and hence could not investigate the repute of an applicant for license or transfer who spends the two years prior to application living in a distant State, regardless of his intention with respect to ultimate residence. It contends that in view of those considerations, the word residence is not convertible with domicile.

Even if the purpose of the act were to enable the board to ascertain the reputation of applicant, it would seem that this investigation would be possible notwithstanding a temporary residence without the Commonwealth of one who is domiciled therein.

In the case of Cheris' Appeal, 19 D. & C. 629 (1933), which was an appeal from the refusal of the county treasurer to issue a retail beverage license, the court stated that the legislative purpose as well as the context of the act should be kept in view of ascertaining the meaning of the word "residence", and stated, at page 630:

"The manifest purpose of the statute was to prevent the immigration of applicants into communities where the sale of the commodities to be licensed was more profitable than elsewhere, which immigration would unfairly compete with the honest, bona fide merchants, who had invested their capital and exerted their endeavors in previous days, when the opportunity to sell such beverages was forbidden by law."

Whether the purpose of the act was to facilitate investigation of applicants or to prevent the immigration of out of State prospective liquor dealers into the Commonwealth or some other purpose, the act makes it clear that only American citizens and Pennsylvanians shall have the privilege of selling liquor within the Commonwealth. In our opinion, one who is domiciled in Pennsylvania is a Pennsylvania resident with-

in the meaning of this act as certainly as he is a resi-
dent here within the meaning of the Fiduciaries Act
or of the First Class Township Law.

The case of Beretsky License, 68 D. & C. 91, is au-
thority for our conclusion in this respect. In that case
Judge Aponick stated, at page 92:

"We can find no decision defining 'resident' within
the meaning of the above provision. However, we are of
the opinion that 'in cases such as this, "residence" ap-
proximates domicile in meaning': Commonwealth ex
rel. Fortney v. Bobrofskie, 329 Pa. 44-46."

In the case of Danisch License, 71 D. & C. 346, a
similar rule was applied, though it was held that appli-
cants had changed their residence. In that case the evi-
dence indicated that applicants actually lived in Mon-
roe County where they had all of their belongings and
intended to and did establish their permanent and true
home there. So far as the present applicant is con-
cerned, as distinguished from his wife, the facts in
this case are not analogous to the present one.

Where, as in the present case, the board asserts that
applicant has changed his residence, the burden of
proving the change is upon the board: Davis v. Davis,
91 Pa. Superior Ct. 354; Beretsky License, 68 D. & C.
91, 92. In our opinion it has not met its burden.

Accordingly, we conclude that applicant, James A.
Christman, Jr., was a resident of the Commonwealth
of Pennsylvania for the two years immediately prior
to the date of application for transfer.

### Order

Now, February 25, 1957, the above entitled matter
having been assigned to this court and heard de novo,
the action of the State Liquor Control Board is over-
ruled and it is ordered that the retail liquor license for
the premises at 934 Market Street in the City of Far-
rell be transferred to applicant, James A. Christman,
Jr., trading as Christman's Hotel.

*Exception*

And now, February 25, 1957, to the foregoing order of the court counsel for the Commonwealth excepts, and eo die, a bill of exceptions is sealed for the Commonwealth.