Miller *v.* Smith.

## NATHAN G. MILLER *vs.* WILLIAM B. SMITH.

On the trial of an action for a breach of a warranty of the soundness of a fast trotting horse, alleged to be a cribber, a witness possessing the requisite knowledge and experience may be asked the value of fast trotting horses of a certain age, size, gait, speed and other qualities; and whether cribbing injures fast trotting horses for use or in market value, and how much; and assuming a sound horse possessing certain qualities to be worth a certain sum, what would be his market value being a cribber.

At the trial of an action for a breach of warranty of the soundness of a horse the defendant testified that the horse was cheap when sold for $9000, the price paid, and had since improved; on cross-examination he was asked if he would now give $3000 for the horse; the court, against the defendant's objection, allowed the question to be put, but said the witness might decline to answer it; the witness then said, he had no money; being asked if he would give his note, he said he did not wish to purchase. *Held,* that it did not appear from the mere statement of the question and answers that the court had exceeded its authority in allowing the question to be put, to test the credibility of the witness.

CONTRACT for a breach of warranty of soundness in the sale of a mare. The alleged unsoundness was a habit of crib-biting and wind-sucking.

Trial in the Superior Court before *Allen,* J., who after a verdict for the plaintiff of $5000 allowed the defendant's bill of exceptions, the portion of which, not waived at the argument, was as follows: There was evidence of the purchase of the horse for $9000; of the warranty; that the horse cribbed or sucked wind and that cribbing and wind-sucking were habits of the same nature.

There was also evidence tending to show that cribbing or wind-sucking in its early stages, and under some circumstances, did

not so affect a horse as to make him unsound; that under other circumstances it did; that some horses, when they made such motions as it was testified this horse made, and uttered the noise described by the witnesses, sucked wind, and others did not; that when a horse did suck wind it injured the animal, and when he did not, sometimes the animal remained uninjured.

Witnesses were called by both parties to show the nature of cribbing and wind-sucking; the extent to which this horse was addicted to it; the effect it had and probably would have upon her power of endurance, and upon her value; the means usually employed to prevent this habit in horses; the appliances which had been used upon this horse, and the effect which these appliances had produced.

For the purpose of showing the amount of his damages, the plaintiff put into the case a number of depositions, all taken on a single commission, and the same interrogatories were addressed to each witness.

The third interrogatory was as follows: "State what was the market value of trotting horses from eight to ten years old, sound, kind, honest, of pure and square gait, and able to trot, in good condition, in two minutes and twenty-five seconds to two minutes and twenty-six seconds, and of good size, say from 925 lbs. to 1025 lbs." To this interrogatory, Joseph Harker answered, "$10,000;" John J. Waltermire answered, "From $8000 to $15,000, according to their color, shape and other qualities;" James D. McMann answered, "From $10,000 to $12,000 or $13,000;" John Lovett answered, "From $12,000 to $15,000;" Daniel Pfifer answered, "From $10,000 to 15,000;" F. J. Nodine answered, "Not over $10,000. I think that would have been a fair market price."

The fourth interrogatory was as follows: "State whether or not cribbing or wind-sucking injures fast trotting horses for use or their market value? If you say it does, state how much and what per cent. of their market value does it deduct from them."

In answer to this interrogatory, all the witnesses said cribbing or wind-sucking injured such horses very much: Harker said, "I do not think the market value would be one quarter as much

as if the horse were perfectly sound;" Waltermire said, "It detracts at least two thirds or 66⅔ per cent. of their market value;" McMann said, "It detracts from 60 to 70 per cent from their market value;" Lovett said, "It would detract two thirds;" Pfifer said, "From 65 to 70 per cent.;" Nodine said, "If the horse was a bad cribber, it would detract 60 per cent."

The fifth interrogatory was as follows: "Assuming such a horse as is described in the third interrogatory to have been of the market value of $9000, if sound, how much would be the market value if such a horse is a wind-sucker or cribber?"

In answer to this interrogatory, Harker said, "I do not think the market value would be one quarter of $9000. I would not buy at any price;" Waltermire said, "$3000 or less;" McMann said, "The market value of such a horse would be about $3000;" Lovett said, "The market value would not be over from $3000 to $4000, and might be much less according to the amount it was affected;" Pfifer said, "Not over $2500;" Nodine said, "About $3600."

The defendant objected to these interrogatories and answers; but the court overruled the objections, and they were read to the jury, the plaintiff having offered evidence that the mare was a fast trotting mare, and of the value of $9000, if sound, and that she was in all respects, excepting soundness, as described in the third interrogatory, as far as therein described.

The defendant was himself a witness, and in cross-examination, the plaintiff asked him if he would now give $3000 for the horse. The counsel for the defendant objected to the question. The court, as a matter of discretion, allowed the question to be asked, at the same time stating that he would not compel the witness to answer it. To this the defendant excepted.

The question was repeated under the same declaration from the court, and the witness replied he had no money. Then, against objection, he was asked, under the same declaration of the court, if he would give his note for $3000, payable in two years, for the horse. The witness replied that he did not wish to purchase the horse. He had testified in chief that the horse was cheap when sold at $9000, and that she had improved since,

and that she was as good or better now than when sold, and that the alleged unsoundness did not hurt her market value $1000.

One Harrison was called as a witness for the defendant. In cross-examination, the defendant objecting, the plaintiff was permitted to ask him if he would now pay $3000 for the horse, he having given the same testimony substantially as the defendant. The court instructed him that he need not answer the question, and he did not answer.

In his argument to the jury, the plaintiff's counsel, referring to these questions and answers, stated that he had offered the horse for sale at the sum of $3000 ; that he had held an auction and could not obtain the sum of $3000 for her, of the defendant, or of his friends, who were dealers in horses.

The defendant did not interrupt the plaintiff in the course of the argument, nor object to this part of it, nor ask any instruction concerning it, except to make the following request, which was given : That the refusal of the defendant to accept an offer to purchase the horse, when a witness on the stand, is not evidence to be considered by the jury in estimating the amount of damages, if they came to consider that question.

*N. A. Leonard*, ( *G. Wells* with him,) for the defendant. 1: The interrogatories objected to were addressed to experts, and had reference to the value of a horse, and the effect of a supposed unsoundness on its value. The inquiries were not about the horse concerning which the suit was brought, but about such a horse as is described in the third interrogatory. Without knowing the extent of the habit or disease of cribbing upon the horse described, or its effects on its power of endurance, the witnesses were asked what would be its value, if a cribber. The evidence in the case shows that horses are differently affected by this trait. The third, fourth and fifth interrogatories, taken together, inquire how much a habit or disease, the extent and effect of which is unknown, would depreciate the value of an imaginary horse. The answers of the several witnesses show that they were unable to determine the value of the horse described in the third interrogatory. Their estimate of its value varied from eight to fifteen thousand dollars, " according to his color, shape and other quali-

ties;" and their estimate of his value, if a wind-sucker, depended upon " the amount it was affected," or " if the horse was a bad cribber." The witnesses were further asked, in the fifth interrogatory, after they had expressed an opinion that the horse described was worth from eight to fifteen thousand dollars, t assume that he was worth nine thousand dollars, before answ ring that inquiry. The interrogatories were objectionable as c lling for opinions upon an uncertain statement of facts, and the answers given were necessarily mere conjectures. The several answers show this.

On the question of damages, the opinions of persons unfamiliar with the property or person injured are inadmissible. This is especially true when the property in controversy has not an established grade and price. *Rowell* v. *Lowell*, 11 Gray, 420. *Walker* v. *Boston*, 8 Cush. 279. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. *Joy* v. *Hopkins*, 5 Denio, 84. *Carlton* v. *Hescox*, 107 Mass. 410.

2. The court erred in allowing the question to be put to the defendant and to the witness Harrison, if they would give three thousand dollars for this mare. The question for the determination of the jury was the value of the horse, in the condition she was at the time of the sale. *Tuttle* v. *Brown*, 4 Gray, 457, 460. *Stiles* v. *White*, 11 Met. 356. The willingness or ability of the witness, while on the stand, to purchase the horse at any price, furnished no evidence as to its value, and was not a true test of his judgment or veracity. The court allowed the question to be asked; and the answer, or refusal of the witness to answer the question, was intended to affect the minds and judgment of the jury. The ruling of the court, that the refusal of the defendant to accept an offer to purchase this horse, when a witness on the stand, was not evidence to be considered by the jury, in estimating the amount of damages, and did not cure the error in allowing the question to be put. The question and answer, or the refusal of the witness to answer, were before the jury for their consideration, for all purposes not included in the limitation pointed out by the court. A fair and natural inference was, that the opinion of a witness as to the market value of this horse

which he would not confirm by an actual purchase of the horse while in the witness box, was to be rejected as either not correct, or not -honest. This was the argument addressed to the jury, and if the ruling was correct, the argument was legitimate, and the defendant had no right to complain of it. The question challenged the witness to a false test, as to his judgment or veracity, and was not, therefore, admissible as a matter of discretion. The court had no discretion to introduce a wrong test.

*G. M. Stearns, (M. P. Knowlton* with him,) for the plaintiff.

GRAY, C. J. The only exceptions, which were insisted upon at the argument, were those taken to the admission of certain answers contained in the depositions introduced by the plaintiff, and to the questions permitted to be put on cross-examination to the defendant and to one of the witnesses called in his behalf.

1. Whenever the value of any peculiar kind of property, which may not be presumed to be within the actual knowledge of all jurors, is in issue, the testimony of witnesses acquainted with the value of similar property is admissible, although they have never seen the very article in question. *Beecher* v. *Denniston,* 13 Gray, 354. *Fitchburg Railroad Co.* v. *Freeman,* 12 Gray, 401. *Brady* v. *Brady,* 8 Allen, 101. *Cornell* v. *Dean,* 105 Mass. 435. *Lawton* v. *Chase,* 108 Mass. 238. A witness, having the requisite knowledge and experience, may always be examined by hypothetical questions, even if he has not seen the particular subject to which the trial relates, and has not heard all the other evidence given in the case. *Woodbury* v *Obear,* 7 Gray, 467. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 172.

In *Brill* v. *Flagler,* 23 Wend. 354, which was an action of trespass for killing a setter dog, one inquiry permitted to be made against objection was " as to the value of a good well broke setter dog;" and Chief Justice Nelson was of opinion that, in answer to such an inquiry, the testimony of witnesses acquainted with the peculiar qualities of setter dogs, and who had some knowledge of their value in the market, was admissible, (although they gave their opinions as to the value of setter dogs generally, and not as to the value of the plaintiff's dog in particular,) upon the ground that " they are supposed to be better

acquainted with the general market value of such animals than the generality of mankind," and that "a common standard is thus fixed that may assist in arriving at the value in the particu lar instance, which will vary according to the quality, condition, &c., of the article in question." His only doubt as to the admission of the testimony seems to have been whether the proof of the breed and qualities of the plaintiff's dog was sufficient to authorize the general inquiry; and his opinion in favor of the competency of the testimony appears to have been approved by this court in *Vandine* v. *Burpee*, 13 Met. 288, 291.

In the present case, the questions whether cribbing was unsoundness, and, if it was, how far it affected the value of the mare in question, were questions of fact for the jury. *Washburn* v. *Cudding*, 8 Gray, 430. But it is not to be presumed that all jurors are necessarily acquainted with the effect of this habit upon the value of fast trotting horses. No objection was made to any of the witnesses on the ground of their want of knowledge or experience; and we are of opinion that all the interrogatories objected to were competent. The third asked for the value of fast trotting horses of a certain age, size, gait, speed and other qualities. The fourth was whether the habit of cribbing or windsucking injured fast trotting horses for use or in market value, and how much. And the fifth was substantially a repetition of the fourth, as applied to a horse such as described in the third, and of the value which the plaintiff paid the defendant for the mare in question, and which the defendant testified at the trial was her fair value.

2. In cross-examination, with a view to test the truthfulness, judgment and credibility of a witness, great latitude of inquiry is usually allowed, and its extent and limits, where no rule of law is violated, are within the sound discretion of the judge presiding at the trial. *Hathaway* v. *Crocker*, 7 Met. 262, 266. *Commonwealth* v. *Sacket*, 22 Pick. 394. *Winship* v. *Neale*, 10 Gray, 382. *Swan* v. *Middlesex*, 101 Mass. 173. *Johnston* v. *Jones*, 1 Black 209, 226.

It does not appear to us that the judge exceeded his authority in this respect. The appearance and conduct of the defendant

and of his witness may have been such as to satisfy the judge that the manner in which each of them met and answered, or hesitated or refused to answer the question, whether he would now give for the mare a third of what he had testified she was worth, might assist the jury in judging what reliance they could place upon his testimony. The mere statement of the question and the testimony of the witness does not enable us to determine whether this was or was not so, or to sustain an exception either to the admission or to the rejection of such a question, put with a view of testing the credibility of the witness. The inquiry does not appear to have been permitted for any other purpose; the court instructed the jury that the answer of the defendant was not to be considered in estimating the amount of damages; and no further instruction was requested or exception taken by the defendant, either as to the effect of the testimony, or the argument made upon it by the plaintiff's counsel.

*Exceptions overruled.*