Southern Railway Company v. Graddy.

CASE 56.—ACTION BY GEORGE C. GRADDY AGAINST THE
SOUTHERN RAILWAY CO. IN KENTUCKY.—April
24, 1908.

## Southern Railway Company v. Graddy.

Appeal from Woodford Circuit Court.

Judgment for plaintiff and defendant appeals.—
Reversed.

1. Carriers—Injury to Live Stock—Measure of Damages.—The
damages recoverable is the difference between the fair mar-
ket value of the stock in the condition they would have been
if they had been transported with ordinary care within a rea-
sonable time and the condition they were actually in when
delivered.

2. Expert Evidence.—Experts may be introduced to testify as to
the value of the stock, and the damage occasioned to them by
injury and delay. The price at which the stock sold on the
market is competent but not conclusive as to their value.

FIELD McLEOD, CHAS. M. HARRISS, and HUMPHREY &
HUMPHREY for appellant.

D. T. EDWARDS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL, COM-
MISSIONER—Reversing.

The appellee on September 5, 1906, shipped from
Versailles, Kentucky, to Louisville, Kentucky, over
the appellant railway six yearling thoroughbreds.
The colts were shipped to be sold at a public sale in
Louisville on September 8th. They were loaded at
Versailles on the morning of September 5th, and in
the usual course of transportation should have
reached their destination on the afternoon of the day
they were shipped. They were not delivered at

vol. 139—30

Louisville until the afternoon of September 6th.

Alleging that the stock were injured, and their marketable value at the sale greatly reduced by reason of the negligence of appellant in failing to transport them within a reasonable time, appellee brought this suit to recover damages for the loss sustained. A jury assessed the damage at one thousand dollars, and from the judgment on the verdict this appeal is prosecuted.

In view of the fact that there must be a re-trial of the case, we will only state so much of the evidence as is necessary to an understanding of the errors relied on for reversal.

The proof is conflicting as to the time the stock were received and when they should have been delivered in Louisville, and also as to their condition, and the loss in their marketable value sustained by the delay in their shipment. There was, however, sufficient evidence to warrant a submission of the case to the jury, and to authorize a verdict for appellee.

Serious and just complaint is made of instruction number two, which reads as follows:

"If the jury believe from the evidence that the defendant company negligently and carelessly failed to transport said six yearlings to the Central Stock Yards in Louisville, Ky., within a reasonable time, and without unusual delay, and by reason of the negligence and carelessness of the defendant company, if any proven, the said six yearlings or any of them became sick or ill or feverish or contracted a disease, and were reduced in health or strength, quality or value, they should find in damages for the plaintiff the difference, if any proven, between the fair vendable

market value of said yearlings or any of them on September 8, 1906, at Douglass Park, Louisville, Ky., if the said six head of yearlings were transported to the place of their destination named in the contract of shipment in the ordinary and usual condition had they arrived there within a reasonable time and without unusual delay, and the amount said yearlings sold for in the condition they were in on the 8th day of September, 1906, not exceeding in all five thousand dollars. Unless the jury so believe, they will find for the defendant.''

The radical error in this instruction is that it fixed the measure of damage as the difference between the value of the stock if they had been transported within a reasonable time and without unusual delay, and the amount they sold for at the public sale. It was competent to prove what the stock sold for at the public sale, as a circumstance tending to show their value, and to show that the fair market value was not realized for them. But, what they brought at the sale was not the test of the depreciation in their market value that should have been submitted to the jury. If the stock had been in first class condition and had been transported within a reasonable time, and with the usual care, they might not have brought at the sale one-half of their real or market value. On the other hand, they might have sold for more than their real or market value. The sale may have been poorly attended, not well advertised, held at an inopportune time or an unfavorable place, the day may not have been suitable, the persons conducting the sale may not have had the confidence of buyers. We merely mention these as a few of the many illustrations that might be given for the purpose of showing that what the colts brought at the sale was not a fair

test of the depreciation in their market value caused by the delay in shipment. Appellee was entitled to recover the difference, if any, between the fair market value of the stock in the condition they would have been if they had been transported with ordinary care, reasonable diligence and within a reasonable time, and the condition they were in when delivered at Louisville. C., N. O. & T. P. Ry. Co. v. Pendleton & Hudson, 29 Ky. Law Rep., 721; Newport News & Mississippi Valley R. Co. v. Mercer, 16 Ky. Law Rep., 555; Hutchinson on Carriers, section 1366.

It may be conceded that this rule by which to measure the loss sustained is not by any means accurate or entirely satisfactory but it is the best available under the circumstances. In cases like this all that the shipper is entitled to is compensation for his loss resulting from the delay of the carrier in the shipment. It will be readily agreed that the amount lost is in most instances the depreciation in the fair market value of the stock resulting from the delay, but it is often troublesome to ascertain with reasonable certainty the amount of this loss. Generally speaking, what property brings at a public sale is a fair test of its value, and in some instances it may be the only available test. For this reason it is considered competent for persons shipping live stock for sale to introduce as evidence the price they brought on the market, but this is not the only nor is it a conclusive test. It is only one of the means by which the value of the property and the loss may be ascertained. The opinion of witnesses who saw the stock, or who knew its condition, or the injury it received, or the depreciation in its market value, is also competent evidence, but neither is it conclusive. All these facts, and any others that throw light upon the condition

of the stock, the injury they received, and the depreciation in the market value, the jury have the right to consider in making up their verdict. But, it is not proper to single out in an instruction by which the jury must be controlled any particular standard of value or loss other than the depreciation in the market value. The jury should be allowed, after hearing the evidence, to fix for themselves from the evidence the depreciation in the fair market value, and not be confined by the court to what the property sold for or to the opinion of witnesses as to its value.

It is further complained by appellant that the trial court permitted incompetent evidence to go to the jury. The evidence objected to was made by witnesses who had never seen the colts shipped by appellee and who were not present at the sale when they were offered. These witnesses were gentlemen engaged in the purchase, sale and breeding of race horses, and were familiar with the pedigrees and breeding of appellee's colts. After the colts had been described to them, they were asked in substance to examine the catalogue containing the description and pedigree and state what would be the fair market value of each of them on the 8th day of September, 1906, at Douglass Park, Louisville, Ky., if they had been shipped from Versailles on the morning of the 5th and had arrived at Louisville in the usual time and in the usual condition. Their estimate of the value of the colts was based largely on the knowledge of the witnesses touching their pedigree and breeding.

It is argued that this evidence was too speculative to be admissible and it is said that a witness who has never seen a colt that he is asked to fix a value on would be venturing an opinion not based on sufficient

knowledge to make it competent. In this opinion we do not concur. . The pedigree of a thoroughbred colt is a material factor in fixing its value, and in the estimation of many persons it is more important than the individuality of the animal, its style, bearing and movement, the shape of its body and limbs and general conformation. It is also true that a horse may have a fine pedigree and yet be deficient or defective in some important particulars that could only be discovered by inspection, and that the picture of a horse, whether it be a pen picture, a photograph or a word picture, might convey an inadequate idea of its value and furnish an erroneous impression as to its qualities. But these facts go more to the weight of the evidence than to its competency. There is a wide difference between the weight that a court or jury may and ordinarily will attach to evidence, but if the offered evidence is competent the question of its probative value is for the jury trying the case. Expert and opinion evidence is allowable in many cases, although the expert may have no personal knowledge of the particular thing he is called on to express an opinion concerning and may never have seen it. We do not deem it appropriate within the proper scope of this opinion to elaborate upon the class or character of cases in which expert and opinion evidence is allowable. It embraces a wide field and covers a variety of subjects concerning which jurors may be unable to come to a correct conclusion without the aid of the testimony of persons who have made the subject a study. But, confining our remarks to the matter particularly in hand, we may say that a trader or dealer in stock, or a person who is qualified by experience, may give evidence as to the value of cattle, hogs and

other animals that have a market value although he may never have seen them. If these colts had not been thoroughbreds, it would have been admissible to prove their value by persons who had experience in the breeding or purchase and selling of colts; but, as they were thoroughbreds, and their pedigree and breeding alone were material elements in fixing their value, it was especially pertinent to allow witnesses who knew the value of the pedigree as well as the value of colts generally to testify. The breeding and care of thoroughbreds has been made a special study by many persons. It has become a business of wide importance. Registers are kept, books are written, and papers almost daily published devoted to explaining and exploiting the performance of sires and dams, and the value of certain strains of blood. Thoroughbreds have a market value, and it is regulated in a large measure by the pedigree, although the value is not controlled by standards as reliable or accurate as is the market value of cattle or hogs or sheep or other animals that are daily sold in the open and established markets of the country. A jury composed of persons not acquainted with the value of pedigrees might be disposed to attach little importance to this well recognized factor in fixing the value of a horse. It was therefore important to plaintiff that he should produce to the jury the evidence of persons acquainted with the value of pedigrees, and who could inform the jury touching this feature of the question they were called upon to determine. Fleming v. McClaflin, 1 Indiana Appellate Reports, 537; Miller v. Smith, 112 Mass., 470; Brown v. Hoberger, 52 N. Y., 15; Bourne v. Moore, 32 Mich., 254; Cantling v. Hannibal & St. Joseph R. Co. 54 Mo., 335, 14 Am. Rep., 476; Bowers v. Horen, 93 Mich.,

450, 32 Am. St. Rep., 513; St. Louis Ry. v. Edwards, 78 Fed. Rep., 745..

For the error mentioned in the instruction, the judgment must be reversed, with directions for a new trial consistent with this opinion.