JOSEPH E. O'CONNELL *vs.* AUDREY K. KENNEDY.

Suffolk.    May 9, 1951. — November 15, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Sale*, Warranty.  *Horse.*  *Practice, Civil*, Exceptions:  whether error harmful;  Verdict.  *Error*, Whether error harmful.  *Evidence*, Paper produced on demand.

A finding that there was an express warranty of fitness in the sale of a horse and a breach thereof was justified by evidence that in conversations leading up to the sale the seller stated that the horse was sound, that the buyer purchased in reliance on such statement without having an expert examination of the horse made, and that at the time of the sale the horse was unsound in that it was afflicted with ophthalmia.

No error prejudicial to the defendant in an action appeared in the refusal of a requested ruling pertinent only to the subject matter of a count on which there was a verdict for the defendant.

There was no inconsistency between a verdict for the plaintiff on a count for breach of an express warranty of soundness of a horse sold by the defendant to the plaintiff and a verdict for the defendant on a count alleging that the plaintiff's purchase was induced by a fraudulent representation of soundness made by the defendant, where the jury on the evidence could have found that knowledge by the defendant of the horse's unsoundness, an essential element of the plaintiff's case on the count for fraudulent representation, had not been proved.

There was no error in the exclusion, subject to an exception by the defendant, of a certain paper produced by her attorney upon a request made by the plaintiff's attorney during his examination of the defendant where the judge on the evidence could have found that the paper so produced was not the paper intended to be called for by the plaintiff's attorney and that the defendant's attorney was not justified in believing that it was.

CONTRACT by amendment from a suit in equity commenced on October 20, 1949.

The action was tried before *Giles,* J.

*G. B. Rowell,* (*R. J. Cotter, Jr.,* with him,) for the defendant.

*J. F. Groden,* (*C. C. Worth* with him,) for the plaintiff.

WILLIAMS, J. This is an action of contract to recover back the price of a horse sold by the defendant to the plaintiff and paid for by him. The declaration is in four counts, and as amended alleges in count 1 the breach of an implied warranty of fitness, in count 2 the breach of an express warranty of similar character, in count 3 the breach of an implied warranty of fitness and the failure to accept the return of the horse in accordance with the "usage" of those engaged in like activities, and in count 4 a false representation of fitness. Verdicts were returned for the plaintiff on counts 1 and 2 and verdicts for the defendant on counts 3 and 4. Thereafter, on motion of the defendant the judge entered a verdict for the defendant on count 1 under leave reserved, and denied a motion of the defendant to enter a verdict in her favor on count 2. The case is here on a consolidated bill of exceptions wherein the defendant's exceptions which have been argued are to the denial of her motion to enter a verdict for the defendant on count 2, to the refusal of the judge to grant certain requests for rulings, to the denial of a motion for a new trial, and to the exclusion of certain evidence. The plaintiff's single exception is to the allowance of the defendant's motion to enter a verdict for the defendant on count 1.

There was evidence substantially as follows. Each party maintained a stable of so called "show horses." Each was interested in the exhibition of horses in competition for prizes at horse shows. The defendant had owned and exhibited show horses as a sport for approximately fifteen years and she had bought, sold and traded such horses. The plaintiff had maintained a stable for a somewhat shorter period and at the time of the sale in question owned five horses. The plaintiff desired to purchase from the defendant a five year old horse owned by her named Flagshon. Flagshon was "a conformation hunter. His work was to

jump fences of various descriptions. Conformation is the formation of the horse, his physical appearance, style and stance. . . . He had won a great number of blues, which are first prizes." After talking with the defendant, the plaintiff purchased Flagshon on August 12, 1949, for the price of $7,500. On or about September 6 following, an examination by a veterinarian disclosed that Flagshon was afflicted with periodic ophthalmia, a disease of the eyes which is incurable and results in total blindness. The plaintiff notified the defendant of this fact by telephone on September 10 or 12, offered to return the horse, and asked the defendant for the return of the purchase price. This oral notice was supplemented by a letter of similar import on September 26. The defendant refused to accept the return of the horse but stipulated with the plaintiff in writing that the horse might be destroyed without affecting the rights of either party.

There was testimony by the plaintiff that he first talked with the defendant about the purchase of Flagshon in July. "She said she wanted" $15,000. "He said he could not afford that. She pointed out how clever he was, how well trained, his best record, his condition as to soundness and so forth." He next talked over the telephone with the defendant about the ninth or tenth of August. "She said she wanted" $10,000. He said he would give possibly $7,500. "She pointed out what a fine horse he was and so forth, the same rehash. It was about his quality and so forth. They talked about ability and condition. It was rehash more or less, in the sense; he is a top horse, was worth the money, was sound, clever, well-trained, had a great record." Shortly thereafter the defendant's trainer called him and said, "you have bought a horse." He sent the defendant a check for $7,500 and received the horse on August 12. He did not have the horse examined before the purchase "because . . . [he] relied on Mrs. Kennedy," but on the day he received the horse he had it examined by one Dr. Terry, a veterinarian, for the purpose of applying for insurance. Dr. Terry discovered no eye trouble but did not use an ophthalmoscope

in his examination of the horse's eyes. Dr. Delano, the veterinarian who examined Flagshon on September 6, testified that in his opinion the horse had had the disease two or three months prior to his examination.

From this evidence the jury could have found that in the talk between the plaintiff and the defendant leading to the sale the defendant stated that the horse was sound; that the plaintiff relied on her statement to this effect; and that in fact the horse was not sound but was afflicted with periodic ophthalmia. There was, therefore, evidence of an express warranty of soundness by the defendant and a breach thereof. "Any affirmation of fact . . . is an express warranty if the natural tendency of such affirmation . . . is to induce the buyer to purchase the goods, and if he purchases the goods relying thereon." G. L. (Ter. Ed.) c. 106, § 14. As was said in *Henshaw* v. *Robins*, 9 Met. 83, 88, "To create an express warranty, the word warrant need not be used, nor is any precise form of expression necessary; but every affirmation, at the time of the sale of personal chattels, amounts to a warranty. . . . if the vendor, at the time of the sale, affirms a fact, as to the essential qualities of his goods, in clear and definite language, and the purchaser buys on the faith of such affirmation, that, we think, is an express warranty." As stated by Baron Parke in the leading case of *Kiddell* v. *Burnard,* 9 M. & W. 668, 669–670, "The rule as to unsoundness is, that if at the time of the sale the horse has any disease, which either actually does diminish the natural usefulness of the animal, so as to make him less capable of work of any description, or which in its ordinary progress will diminish the natural usefulness of the animal . . . such horse is unsound." In somewhat shorter form it was said by this court in *Washburn* v. *Cuddihy*, 8 Gray, 430, that a horse is unsound when by reason of disease it is less able to perform labor and service. Whether a horse is sound or unsound is a question of fact for the jury. See *Woodbury* v. *Robbins*, 10 Cush. 520, 523 (glanders); *Brown* v. *Bigelow*, 10 Allen, 242 (permanent lameness); *Miller* v. *Smith*, 112 Mass. 470 (cribbing); *Weinberg* v. *Ladd*, 199 Mich. 164

(glanders); *Fitzgerald* v. *Evans*, 49 Minn. 541 (spavin). In *Woodbury* v. *Robbins*, 10 Cush. 520, 523, it was held that if a horse "really have the seeds of . . . [glanders] in him, he is unsound, although it may be some time before the disease becomes fully developed in its most offensive conditions."

To support an action for breach of warranty it must appear that the affirmation or statement relied upon was made under such circumstances as to warrant the inference that it entered into the contract of sale as finally made. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445. Here the jury could have found that the natural tendency of the affirmation testified to by the plaintiff was of a character such as to induce the buyer to purchase and that he in fact relied upon the affirmation. See *Kurriss* v. *Conrad & Co. Inc.* 312 Mass. 670, 680. It was not necessary that he have an expert examination made of the horse before purchase. He could be found to have been justified in taking the seller at her word. *Henshaw* v. *Robins*, 9 Met. 83. *Gould* v. *Stein*, 149 Mass. 570, 577. There was no error in the denial of the defendant's motion to enter a verdict for her on count 2.

The defendant has excepted to the refusal to grant her requests for rulings numbered 4, 5, 6, 7, 8, 9, and 16. Requests numbered 4, 5, 7, 8, and 9 appear to apply only to the issue relating to an implied warranty and, in view of the conclusion which we have reached, need not be considered.

The defendant's request numbered 6 is as follows. "The plaintiff, having selected Dr. Terry as a veterinarian to examine the horse, is bound by any knowledge which the veterinarian in the exercise of reasonable skill as a veterinarian should have discovered." If this is a correct statement of the law, which we do not intimate, there was no error in its refusal. The plaintiff was not obliged to inspect the animal but could rely on the affirmation of the defendant as to its condition. There was no evidence that Dr. Terry found evidence of disease and, if he should have, the right of the plaintiff to rely on the defendant's affirmation would not be affected.

If there was error in refusing to grant request numbered 16,

"On all the evidence there is no evidence that the defendant or her agents for whose conduct she is responsible knew that the horse was unsound," the refusal was not prejudicial to the defendant as there was a verdict for the defendant on count 4, the only count on which the defendant's knowledge of unsoundness was material.

The defendant excepted to the denial of a motion for a new trial on the ground that a verdict for the plaintiff on count 2 is inconsistent with a verdict for the defendant on count 4. In count 4 it is alleged that the plaintiff was induced to purchase by a fraudulent representation as to soundness made by the defendant. Knowledge by the defendant of the horse's unsoundness was an essential fact to be proved. The jury without inconsistency could have found that the defendant had no knowledge of the unsound condition of the horse but that nevertheless she gave an express warranty of soundness. There was no error in denying the motion.

There remains for consideration a matter of evidence. On examination of the defendant by the plaintiff's attorney inquiry was made why Flagshon was not shown at the "Devon Horse Show" in May, 1949, in which show he had been entered. She was asked: "Q. Now you know, of course, the rules of the American Horse Show Association require a veterinarian's certificate if you do not show a horse after he is entered, don't you? A. He may be excused for various reasons. Q. Please. You know the rules require a veterinarian's certificate if the horse is not shown? A. Not always. Q. Did you submit a veterinarian's certificate when he was not shown in these classes? A. I cannot say. Q. Do you have a copy of it? A. I cannot say I did or I didn't. Q. You knew the Devon Horse Show could not locate it? A. Yes, according to the letter to you. Q. According to the secretary's letter to you? A. Copy of your letter sent to me. Q. Do you have any record or paper showing the reason why Flagshon was not shown?" She replied, "Yes." Her attorney produced a paper. The plaintiff's attorney contended that it was not the paper called for and it was excluded subject to the defendant's exception.

The paper appeared to be a certificate dated May 17, 1950, by one Dr. Neal, a veterinarian. It read on its front side: "5/17/50 Sandhill Veterinary Hospital Southern Pines, N. C. This is to certify that I was treating 'Flagshon's knee' last spring and I am sure the knee was not well enough to show at the Devon show. Mr. Walsh told me at the time he was entered but I told him I doubt him being able to show at the Devon show"; and on its reverse side: "I have known Flagshon for two years and had never noticed him having any eye trouble before and am sure if he had the trouble I would have known it. (Signed)   J. I. Neal D. V. M."

The defendant contends that she was entitled to its admission under the established rule recently discussed and stated in *Leonard* v. *Taylor*, 315 Mass. 580. If it was the paper which the plaintiff's attorney called for and he examined it, it was admissible at the instance of the defendant although otherwise incompetent. To admit it, however, the judge must find, as a preliminary matter, that the paper was the one for the production of which the plaintiff had called. It may fairly be found from the examination of the defendant leading up to the request for the paper that the plaintiff's attorney was seeking some certificate or paper drafted at or about the time of the Devon Horse Show which would explain the failure of the defendant to show Flagshon. The judge could find that the plaintiff was not calling for a writing made substantially one year later and that the defendant's attorney was not justified in believing that the paper which he produced was the one intended to be called for. A majority of the court thinks there was no error in excluding the paper.

As the plaintiff is entitled to prevail, we find no occasion to deal with his exceptions. No larger damages could be awarded him on count 1 than the plaintiff was entitled to receive on count 2.

*Defendant's exceptions overruled.*
*Plaintiff's exceptions dismissed.*